Williams, J.
On tbe 30tb day of April, 1887, tbe attorney-general filed, in tbis court, a petition praying tbat a judg *197 ment of ouster from the office of president of the council of the city of Urbana, be pronounced against the defendant. The material allegations of the petition are, that the city of Urbana is a city of the fourth grade of the second class, divided into three wards, and having a common council composed of six members. That on the 18th of April, 1887, at the meeting provided by law for the organization of the council, the mayor presiding, the newly elected members of the council having properly qualified, and all the members being present, an election was held for the office of president of the city council, which resulted in defendant receiving three votes, John Gr. Curley two votes and William J. Harris one vote. Thereupon the mayor declared the defendant duly elected. By a like vote a president pro tempore, and a clerk, were chosen; and the defendant assumed and entered upon the office to which he was so declared elected, which the petition charges to be a wrongful and unlawful usurpation of, and intrusion into, said office.
The defendant demurs to the petition, and claims in support of the demurrer:
1. That unless directed by the governor, supreme court, or general assembly, the attorney-general is not authorized to commence an action against a person who usurps or intrudes into a public office:
2. That the position of president of the city council is not a public office; and
3. That it appears, from the averments of the petition, that the defendant did not usurp, or intrude into the office, but was legally elected, and entitled thereto.
I. The first claim of the defendant, it is said, is based upon section 6762 of the Revised Statutes ¿ but that it is not supported thereby is evident when that section is considered in its proper relation.
Section 6760 of the Revised Statutes provides that a civil action may be commenced against a person, who usurps, intrudes into, or unlawfully holds a public office; and section *198 6761 authorizes such action against a corporation in certain specified instances.
Section 6762 reads as follows: “The attorney-general, or a prosecuting attorney, when directed by the goveror, supreme court, or general assembly, shall commence any such action; and when, upon complaint, or otherwise, he has good reason to believe that any case specified in the preceding section can be established by proof, he shall commence an action.” The contention is, that inasmuch as section 6761 is the preceding section referred to in the latter clause of section 6762, the authority of the attorney-general under that clause, to commence actions upon “ complaint, or otherwise,” is limited to the cases against private corporations specified in section 6761; and, while by virtue of the first clause, he is authorized, when directed as therein provided, to commence an action for any of the causes enumerated in either section 6760 or 6761, he is so authorized, only, when thus directed. The effect and purpose of section 6762 is to impose upon the attorney-general certain duties therein defined. By the first clause, he is required, when directed by the governor, supreme court, or general assembly, to commence any action under either of the preceding sections; and the latter clause makes it equally obligatory on him without such direction to commence an action under section 6761, when he has good reason to believe that any case therein specified can be established by proof. In addition to the duties enjoined, and powers conferred on the attorney-general by section 6762, he may, under the provisions of section 6763, upon his own relation, bring any such action; “ and if the action be brought under the first subdivision of section 6760, security for costs may be reqúired.”
It is quite obvious that section 6763 authorizes the attorney-general, upon his own relation, without any direction by the • governor, supreme court, or general assembly, to bring any action specified in either section; and if it be brought against a person who usurps or intrudes into, or unlawfully holds or exercises a public office, he may require security for costs; but need not do so. The petition discloses that this action is brought by the attorney-general, upon his own relation, and *199 it constitutes no valid objection thereto that it is so brought without the direction of the governor, supreme court or general assembly.
II. We are also of opinion that the president of a city council is an officer, and his station a public office, within the purview of section 6760. It is true the place is without emolument, but that is not a necessary incident to an office; nor is it to be denied that character, because the incumbent is chosen by a limited elective body, composed of public officers; many public officers are so chosen. The term of his office is fixed, and its functions, which are of a public nature, and for public purposes, are bestowed and prescribed by statute.
These public functions, pertaining to the office of president, .are in addition to, and different from those of members of the council. He is, by virtue of his position, the presiding officer •of the organized body, appoints its committees, and becomes, ex officio, a member of certain boards; and all by-laws, resolutions and ordinances are required to be authenticated by his signature. Of such consequence was the office considered by the legislature, that it was deemed proper to provide that no business should be transacted by the council until an occupant was chosen.
Besides, it is of some significance that the statute speaks of the president of the council as an officer. Section 1676, of the Revised Statutes, provides that “ if the members-elect of the council, and the members holding over, then present, constitute a quorum, they shall, forthwith, proceed to organize, by •electing a president and president pro tempore, from their own number, a clerk, and such other officers, necessary to perfect their organization, as by ordinance may be provided.” It is urged,' however, that this does not recognize, or designate the president as an officer, because the phrase “such other officer” refers to officers other than the clerk. But it undoubtedly refers equally to each of the other incumbents of the places to be filled by election, in perfecting the organization. This conclusion is fortified by the latter clause of the section, providing that “ the mayor shall be, ex offieio, president at the *200 time of such organization, and in case of a tie vote in the choice of any officer at such organization, the mayor shall give the casting vote.” The purpose of the meeting is to organize. The election of the president is a part of, and necessary to such organization, as much so as the election of the clerk; and the mayor may give the casting vote, in case of a tie in the choice of a president, as well as in choosing a clerk. To hold otherwise might wholly defeat the object of the section, by preventing a speedy organization. We have not overlooked section 1707, which specifies the officers of cities of the second class. Admittedly there may be other officers of such cities, than those therein named — notably members of the city council. Nor do we regard section 1717 inconsistent with the view expressed.
III. The question left for consideration is, does the petition show a usurpation of, or intrusion into the office of president of the council, by the defendant ?
This depends upon whether he was elected; and this again upon the vote necessary to elect. It is averred that at the election held, all the members of the council were present, and voted; that he received the highest number of votes cast for any candidate, and was declared elected; and it is conceded that if a plurality of the votes are sufficient to elect, he was duly elected to, and rightfully holds the office. Otherwise not.
The statute does not prescribe any specific mode of electing the officers at the organization of the council, nor declare what vote is requisite to such election; but in general terms requires that the members shall “ forthwith proceed to organize by electing a president,” and the exact question to be. decided is, whether, in the absence of any express statutory rule on the subject, a majority is necessary, or a plurality is. sufficient to elect.
In McCrary on Elections, sec. 197, the general rule is thus stated : “ In the absence of any statutory provision expressly requiring more, a plurality of the votes cast will be sufficient to elect. It is only where the statute so provides, that a majority of all the votes cast is necessary to the choice of an *201 officer. In this country where candidates may be numerous, and the votes of the electors divided among a number of different persons, to require a majority to elect would be to prevent a choice in very many cases; hence, it is, that a majority is seldom required in a popular election.”
And in Cooley on Constitutional Limitations, page 620, it is said, that “ unless the law under which the election is held, expressly requires more, a plurality of the votes cast will be sufficient to elect, notwithstanding these may constitute but a small portion of those who are entitled to vote.”
Cushing in his Law of Legislative Assemblies, says: “ The term majority is understood in this country in two significations. In its broadest sense it denotes the greatest of any number of unequal divisions of the whole body; in its strictest, the greater of any two unequal divisions of the whole body. In the popular elections of this country, both these principles are practically applied; the first being known as the principle of plurality; the other only as that of majority. In elections in which the principle of plurality is adopted, the candidate who has the highest number of votes is elected.
“At the time of the first settlement and colonization of the United States, the elections of members of parliament in England were conducted upon the principle of plurality, which also prevailed in all other elections. Such has been and still continues to be the common law of England; and such is the present practice in that country in all elections. Indeed, what is meant there by the term majority, embraces what is denoted by the word plurality. In this country, however, the principle of majority, or absolute majority, as it is sometimes called, was early introduced into the law of elections by the colonists of New England, where it has ever since prevailed to a greater or less extent. In the states where this principle is established, it is usually provided by the constitution or laws, that an absolute majority shall be necessary to the election of certain officers. In all the states, with the exception of the New England states, the principle of plurality generally prevails in reference to all municipal elections, being specially provided by the constitution, or laws, or usages of *202 the several states. Whether, in the absence of any particular provision, the plurality, or the majority principle, would be recognized as the law, must depend upon the usage in each particular state.” Cushing’s Law of Legislative Assemblies, sec. 117-129.
In this state the plurality principle has been, and is applied generally to elections. Prom this usage the term election has acquired a popular signification, and is commonly understood to mean a choice by a plurality of the votes; and the candidate receiving the greatest number of votes is said to be elected. The legislature not having designated any mode of electing the officers at the organization of the council, nor prescribed the number of votes necessary to elect, but simply required the members to organize by “ electing,” it is a fair inference, in the absence of anything to indicate a different intent or meaning, that the term “electing” was used in its popular and generally received sense of choosing by a plurality of votes. This inference is aided by the context, as well as by the manifest object of the statute. One leading purpose was to effectuate a prompt, if not an immediate, organization. As is said by Johnson, J., in State v. Green, 37 Ohio St. 232: “ The council is charged with an important public trust. It is essential to the exercise of that trust, that a speedy organization should be had. ‘ They (the members present, if a quorum) shall forthwith proceed to organize,’ is the unmistakeabe language of the statute. Where the question involved is difficult of solution, any system of parliamentary tactics, or any conduct of members, however well meant, calculated to defeat such an organization, or any construction of the statute leading to such a result, will not be favored, unless clearly required by the terms of the law.”
To remove, if possible, all causes and sources of delay, in effecting the organization, it is provided that “ in case of a tie vote, in the choice of any officer in such organization, the mayor shall give the casting vote.” Applying the plurality rule to the election, a tie vote is the only contingency that could arise to prevent the speedy organization.
*203 The statute having specifically enjoined that the organization should be immediately proceeded with, and that no business should be transacted until effected, the further provision against the possibility of a delay resulting from a tie vote, furnishes ground for presuming that such vote was the only obstacle the legislature contemplated could interpose itself to such speedy organization, and that it was therefore deemed unnecessary to expressly provide that a plurality vote should be sufficient to elect.
Our conclusion is that in choosing the officers necessary in the organization by the council, the members being present, and voting for candidates, a plurality of the votes cast is sufficient to elect.
The defendant was, therefore, legally elected.

Demurrer sustained and petition dismissed.